**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LINDA M. HALLER,

    *Plaintiff*,

v.                            CASE NO. 09-CV-13582

COMMISSIONER OF         DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence fails to support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED in PART**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED** to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g).

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 15.)

Plaintiff was 57 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 90, 583.) Plaintiff's relevant employment history includes work as a cashier/sorter. (Tr. at 108.) Plaintiff last worked in 2006. (*Id.*) Plaintiff filed the instant claims on November 30, 2000, and June 7, 2002 (DIB and SSI), alleging that she became unable to work on May 15, 2000. (Tr. at 87, 512, 520.) The claims were denied at the initial administrative stages. (Tr. at 515, 523.) In denying Plaintiff's claims, the Defendant Commissioner considered depressive disorder and anxiety-related disorders as possible bases of disability. (*Id.*) On September 8, 2004, Plaintiff appeared before Administrative Law Judge (ALJ) B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 535-45.) In a decision dated November 24, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 545.) After an Appeals Council Order of Remand dated December 15, 2006, a hearing was scheduled before the ALJ for May 23, 2007. (Tr. at 62-64, 65-75, 546.) Plaintiff again appeared before the ALJ on May 23, 2007, and in a written opinion dated June 29, 2007, the ALJ again found Plaintiff was not disabled. (Tr. at 14-25.) Plaintiff requested a review of this decision on July 9, 2007. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 8, 2009, when, after the review of additional exhibits[2] (Tr. at 558-60), the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council

at 8-11, 525-28.) On September 10, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of

---

evidence may not be considered for the purpose of substantial evidence review.

3

the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through March 31, 2002, and had not engaged in substantial gainful activity since the alleged onset date of May 15, 2000. (Tr. at 19.) At step two, the ALJ found that Plaintiff's affective disorder and personality disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21.) At step four, the ALJ found that Plaintiff did not have the residual functional capacity to perform her past relevant work as a cashier/sorter. (Tr. at 23-24.) At Step Five, after considering non-exertional limitations, the ALJ determined that Plaintiff retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. at 24-25.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 25.)

**E.    Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment for depression with Kenneth Beroza, M.D. (Tr. at 215-28.) Iin February 2001 Plaintiff was referred by the Disability Determination Service (DDS) to Barbara Halazon, M.A., of Saginaw Psychological Services. Plaintiff told Ms. Halazon that she was "kinda like nervous" and that her "nerves are real bad." (Tr. at 188.) Plaintiff attributed her condition to difficulties with her boyfriend stalking her, threatening her and breaking into her house. (*Id.*) When asked how long this condition had existed, Plaintiff indicated that "'in the

7

summer I got Bell's Palsy and right after that everything just went bad.'" (*Id.*) Plaintiff indicated that she had been alright before the palsy despite a nervous breakdown "'a lot of years ago.'" (*Id.*) Ms. Halazon diagnosed Plaintiff with: at Axis I, depressive disorder (311) and anxiety disorder, not otherwise specified (300.00); at Axis II, dependent personality disorder (301.6); at Axis III, post menopausal with breakthrough bleeding; at Axis IV, problems with primary support group and break-up of significant other relationship; and at Axis V, GAF of 55. (Tr. at 194.) The overall prognosis was "fair." (*Id.*)

A Psychiatric Review Technique performed in 2001 concluded that Plaintiff has affective disorders, anxiety-related disorders, and personality disorders. (Tr. at 196-205.) Under the "B" criteria, it was found that Plaintiff has mild restrictions of activities of daily living, moderate limitations in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation. (Tr. at 206.)

A mental Residual Functional Capacity (RFC) assessment conducted in 2001 concluded that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods, and the ability to interact with the general public but was not otherwise significantly limited in any way. (Tr. at 210-11.)

In 2001, Plaintiff indicated on a Daily Activity Report that she naps for up to two hours each day and has trouble sleeping at night, but is able to take care of her personal needs and grooming, fix her own meals, clean her house, do laundry, wash dishes, vacuum, dust, mop, shop for food, drive, read magazines, watch television, garden, and visit with friends and family for several hours at a time. (Tr. at 116-19.) Her 2002 report was virtually the same except Plaintiff indicated she only visits friends and family for around one-half to one hour. (Tr. at 163-66.)

8

From 2002 throughout 2004, Plaintiff sought treatment with Central Michigan Community Mental Health (CMCH) for depression. (Tr. at 215-28, 287-336.) In May 2002, Plaintiff reported that she would not return to Dr. Osman of CMCH because he told Plaintiff, "'You don't need a psychiatrist, you need a job.'" (Tr. at 227.) In June 2004, Dr. Beroza indicated that Plaintiff

> seems to make little effort in her personal life to make any headway at all in changing her routine. She is quite dependent on just a few people around her and beyond that is quite isolated. She seems to react and take on a lot of struggles of others around her as a personally defeating issue. She then has little insight into her life situation and emotional life. She might be a consideration for a group, such as DBT, to focus on making functional changes in her day-to-day life.

(Tr. at 332.)

In May 2002, Michael Osman, M.D., of CMCH, performed a psychiatric assessment on Plaintiff and diagnosed Plaintiff with depression, chronic and intermittent, history of sexual abuse at Axis I, mixed personality disorder features (borderline, dependent) at Axis II, menopausal at Axis III, uncertain support system and financial stress at Axis IV, and a GAF score of 50 at Axis V. (Tr. at 242.) In June 2002, Plaintiff was assessed by Dr. Beroza and was diagnosed with major depression, chronic and severe at Axis I, Axis II findings were deferred, Plaintiff was diagnosed with benzodiazepine tolerance and joint pain at Axis III, long-term depression problems at Axis IV, and a GAF score of 40 at Axis V. (Tr. at 238.)

A Psychiatric Review Technique performed in August 2002 found that Plaintiff had affective disorders and personality disorders. (Tr. at 270.) Specifically, Plaintiff was diagnosed with depression, chronic and intermittent, and mixed personality disorders. (Tr. at 273, 277.) Under the "B" Criteria, Plaintiff was found to have mild limitations with regard to daily living activities, moderate restrictions in maintaining social functioning, maintaining concentration, persistence and pace, and one or two episodes of decompensation, each of extended duration. (Tr.

at 280.) Evidence did not establish any "C" Criteria. (Tr. at 281.) Under the functional capacity portion of the assessment, it stated:

> Claimant is able to do unskilled work. Is able to do simple tasks on a sustained basis. Claimant is moderately limited in ability to remember, carry out detailed instructions, to maintain attention and concentration for extended periods. Also, is moderately limited in ability to interact with the general public, and respond to changes at work.

(Tr. at 286.)

Although Plaintiff complained of hip pain, right greater than left, a radiological exam performed in May 2003 was unremarkable, leaving the etiology of Plaintiff's pain uncertain. (Tr. at 486-87.) A multiple sleep latency test was performed on Plaintiff in June 2003 and found "no evidence of hypersomnia - negative for narcolepsy." (Tr. at 504.) In addition, Plaintiff was found to have "normal sleep breathing." (Tr. at 506.)

Plaintiff underwent right shoulder arthroscopic surgery in January 2005. (Tr. at 338-39.) In May 2005, Plaintiff sought treatment for her shoulder because Plaintiff "may have overdone it while moving furniture and painting the last couple weeks." (Tr. at 337.)

In 2006, Plaintiff underwent treatment, surgery and physical therapy for a left ankle fracture. (Tr. at 349-55, 474.) At Plaintiff's annual physical in 2006, it was noted that Plaintiff had microscopic hematuria, nicotine addiction, osteopenia, hyperlipidemia, and a nonhealing, nondisplaced lateral malleolar fracture. (Tr. at 368, 471 (fracture).) A colonoscopy performed in November 2006 showed no major lesions. (Tr. at 509-11.) Plaintiff continued treatment for hyperlipidemia in 2007 and was encouraged to continue with a low fat diet, increase exercise, and cease smoking, but Plaintiff was not receptive to the recommendation that she quit smoking. (Tr. at 364-66, 371.)

**F.     Analysis and Conclusions**

1.   **Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to perform work at all exertional levels, but that nonexertional levels compromised her ability to do so. (Tr. at 24.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

2.   **Substantial Evidence**

Plaintiff contends that:

> The RFC that the ALJ utilized in the denial dated June 29, 2007 was not a hypothetical given to the VE at the hearing. Instead the RFC that the ALJ utilized in the June 2007 denial was the same RFC and hypothetical utilized in the 2004 denial and hearing. (Tr. at 21, 38, 576-77.) The VE at the 2007 hearing was not asked a hypothetical that even comes close to conforming to the RFC utilized in the denial and the jobs listed in the denial that the VE 'testified' to were given in response to a hypothetical much less restrictive than that utilized in the denial . . . [and therefore] the case should be remanded . . . . And although the Commissioner may argue this is harmless error because a VE in 2004 listed jobs in response to the RFC utilized by the 2007 denial, such is not the case [because] [t]he VE in 2004 is not the same as the VE in 2007.

(Doc. 10 at 8.) Defendant responds that the error should be deemed harmless, that substantial evidence supports the ALJ's findings at Step 5 and that remand would be a useless formality. (Doc. 15 at 17-18.)

At the hearing on September 8, 2004, the Vocational Expert (VE) was asked to consider a person with Plaintiff's background who

> can meet the demands of light work but who should have no jobs – who should have only work involving one, two or three-step instructions. Should have simple, unskilled work with an SVP of 1 or 2. Should have no jobs that would require her to compute, calculate, problem solve or reason. Should have no jobs that would require concentration on detailed or precision work. Should have jobs with routines that would not require changes or adaptations more than once per month. Jobs that

would require only brief and superficial contact with the general public other than coworkers. And jobs that would afford an absence or tardy once per month.

(Tr. at 576-77.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform a number of jobs available in the region, i.e., the lower two-thirds of the lower peninsula of the State of Michigan. (Tr. at 577-78.) The VE further testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (Tr. at 578.) Plaintiff's counsel asked whether work would be precluded if a person needed to nap once a day up to an hour during normal working hours and the VE responded affirmatively. (Tr. at 578-79.) In response to Plaintiff's counsel's questions regarding concentration, the VE testified that a person needs to be "productive somewhere in greater than 50 percent of the time, so 50 to 60 percent – even on simple, repetitive types of positions." (Tr. at 579.)

At the hearing after remand from the Appeals Council held on May 23, 2007, a different VE was asked to "assume a person of the same age, educational, vocational experience as the claimant who would require an entry-level, unskilled job that did not involve working with the public and with only limited contact with co-workers, and could be done at the medium exertional level." (Tr. at 597.) The VE testified to the significant number of jobs that Plaintiff could perform in the regional economy, i.e., lower peninsula. (Tr. at 597-98.) The ALJ inquired whether Plaintiff could perform such work if her testimony were fully credible and the VE responded that she could not based on Plaintiff's testimony that she is "housebound and unable to function three days per week and this would lead to absenteeism that would not be acceptable in the workplace." (Tr. at 598-99.) The VE also noted that her testimony was consistent with the DOT. (Tr. at 599.) Plaintiff's counsel made no objections regarding the hypothetical or the fact that the VE was a different person from the VE who testified at the 2004 hearing.

In the ALJ's 2007 decision, currently under review, the ALJ found that Plaintiff has "the residual functional capacity to only do work involving 1, 2, or 3 step instructions; simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2 only; jobs that do not require her to compute/calculate, problem solve or reason; no jobs involving concentration on detailed or precision work; routine work that does not require changes or adaptations more than once per month; work requiring brief and superficial contact with the general public other than co-workers; and jobs which allow her to be absent or tardy once per month." (Tr. at 21.)

The following chart provides a summary:

|  | ALJ's RFC findings | Hypothetical posed to VE at 2004 hearing | Hypothetical posed to VE at 2007 hearing |
| --- | --- | --- | --- |
| exertional level | can do work at all levels | light work | medium work |
| skill level | only work involving 1, 2, or 3 step instructions, simple unskilled work with and SVP rating of 1 or 2 only, that do not require her to compute/calculate, problem solve or reason | only work involving 1, 2, or 3 step instructions, simple unskilled work with and SVP rating of 1 or 2 only, that do not require her to compute/calculate, problem solve or reason | entry level, unskilled |
| concentration | do not involve concentration on detailed or precision work | do not involve concentration on detailed or precision work | not addressed |
| adaptation | does not require changes or adaptations more than once per month | does not require changes or adaptations more than once per month | not addressed |

| contact with public | brief and superficial contact with the general public other than co-workers | brief and superficial contact with the general public other than co-workers | does not involve working with the public and with only limited contact with co-workers |
|---|---|---|---|
| tardiness/absence | allow her to be absent or tardy once per month | afford an absence or tardy once per month | not addressed |

Referring to the comparison above, it appears that the ALJ's RFC findings were based on the hypothetical given to the VE at the prior 2004 hearing rather than the relevant 2007 hearing. Although the hypothetical at the 2007 hearing included a restriction that work be performed no higher than the medium exertional level and the 2004 hypothetical included a restriction to light work, the ALJ nevertheless found that Plaintiff could work at any exertional level. I fail to find in this record substantial evidentiary support for this conclusion. More significantly, the 2007 hypothetical fails to include any concentration, adaptation, or tardiness/absence limitations that the ALJ found affected Plaintiff's RFC. These concentration, adaptation and absence/tardiness limitations are of paramount importance in cases such as this involving primarily mental health issues, and I suggest that a failure to incorporate these limitations in the hypothetical deprives the ALJ's conclusions relating to the extent of Plaintiff's nonexertional impairments of substantial evidentiary support.

The Sixth Circuit has "remanded an ALJ's decision where the hypothetical posited to the vocational expert did not accurately reflect the claimant's limitations . . . . In such cases, the ALJ mistakenly omitted some limitations when formulating the hypothetical." *Pasco v. Comm'r of Social Security*, 137 Fed. App'x 828, 845 (6th Cir. 2005). In *Pasco,* the court held that the even though the RFC was different from the hypothetical given to the VE, there was no reversible error

14

because the VE's testimony was based on a hypothetical that reflected the same mental limitations found to be supported by substantial evidence by the ALJ's RFC findings and because the hypothetical was more favorably physically to Plaintiff than the RFC findings. *Id.*

In the instant case, unlike *Pasco,* I suggest that the hypothetical failed to reflect both the mental and the physical limitations ultimately found by the ALJ to be supported by substantial evidence in his RFC findings. In addition, unlike *Pasco*, the hypothetical was not more favorable physically to Plaintiff than the RFC findings. I therefore suggest that the decision of the Commissioner should be reversed and remanded to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g). *See also Ritter v. Comm'r of Social Security*, No. 09-cv-10684, 2010 WL 1064411, at *8 (E.D. Mich. Mar. 22, 2010) (reversing and remanding under sentence four where "the VE's job findings, adopted by the ALJ, are tainted by the omission of key exertional and postural limitations in the hypothetical question."); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*,

474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: August 9, 2010 | s/ *Charles E Binder*<br>CHARLES E. BINDER<br>United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: August 9, 2010         By      s/Patricia T. Morris
                             Law Clerk to Magistrate Judge Binder